on behalf of Mr. Ruiz, I apologize for my voice, seeing a doctor first, which is something you can't hear. You'll have to speak up. I'm doing my best. In this particular case, we have a situation where the man who owns the property, who is in possession of the lab, who is in charge of manufacturing, it's his business, his home, his garage, his lab, with prior convictions, he gets 17 and a half years. The man who sold the methanol to my client, Mr. Ruiz, he gets just over three years. Mr. Ruiz, who is my client, with no prior convictions, not his house, no one places him at the working site, no one places him at the location of the weapons. Undisputedly, he didn't have a weapon when he was arrested. And he gets just over 20 years. I asked the Court, obviously, in my brief, what's wrong with this picture? It's desperate, disparate, and unreasonable, including the fact that the Probation Department recommended 210 years. What happened in this case is that Judge Ishii took, added four points to the base level of 38, then took them away, coming up with a figure of 235 months. Two points for the gun, two points for obstruction, didn't give my client a minor role, and didn't give him an acceptance of responsibility. With respect to the firearms, as I point out on page 1011 of the brief, this is a situation where the Court didn't say, and I appreciate the distinction between reasonable doubt and preponderance of the evidence, but what they were talking about was there was no evidence that, one, no fingerprint evidence was presented. This is straight from the Ruiz previous case. No witnesses linked a firearm to either defendant. No similar testimony or evidence connecting even one of the co-conspirators to any of the firearms at the scene. That's the trial testimony. None of the conspirators put guilt in possession of the firearms. No one testified to possessing the firearms or seeing someone in possession of them. And what the Court is talking about is the absence of evidence. Is there a, is this a situation where you've got a firearm, and let's say there are five people there. And you don't know who possesses it, so you can't convict any one of the single ones of possession of a firearm. But you're convinced that somebody in that five possessed it. You just can't prove which one. But when you then sentence for conspiracy, you can include the fact that one of the conspirators possessed that gun. Is that what happened? Is that what the thinking was? I think the thinking was that there were suppositions, and what I say in the brief is it exists, therefore it must be possessed. And I think that that's wrong thinking. In other words, in the absence of real evidence that somebody actually possessed it, what they said is somebody could have been there. It was out in the open in a certain area. Somebody was near there. They could have possessed it. But look at the Kelso case. Look at the Highsmith case. These are people who were in a car with the drugs in the car and a gun in the car. This is a person who had the drugs in the bedroom with the gun in the bedroom. And they said the same principle would be even stronger. In fact, those cases, the facts are stronger than our case because there was nobody else to say could have, could have, should have. And when you're getting two points for speculation, and that's in essence what happened here. The judge, Ishii, was saying, well, you know, somebody might have been up in, upstairs, and they might have given a signal to, but there wasn't evidence presented. And what I'm suggesting is what we need and what the court talked about was evidence. Now, later on, they said, well, this, the, Efron said that he was in possession, but the judge disregarded that. So that, that was not evidence that he took into consideration. Now, I appreciate the fact that the judge went below the guidelines. I understand that. But the point being with respect to the gun, when you have a situation with a lack of evidence and, and requiring supposition of somebody must have possessed it or because it's there, I don't think that that, that, that is a criteria. So the fact that he added the gun charge and then took it away doesn't help us any at all in the first place. My, my feeling is that with respect to the minor role, what he did, Mr. Ruiz, is purchase methanol. And it's interesting to note, this is not his place, not his lab, so on, that the person who sold him the methanol gets three years and change. And the person who buys the methanol, which was not even being used in the cooking process that they had interrupted, was not even being used. Now, there's no question that it was going to be used at some future date, assuming the police didn't do it. The enhancement that the district judge applied on weapons require anything more than, A, weapons are present, and, B, they're not clearly unrelated to the crime. I think they do. I think there has to be some kind of evidence showing that it was actually possessed because otherwise you're, what do you do with Kelso, what do you do with Highsmith? These are situations where the gun was there in the car. The gun is there in the bedroom. The drugs are there. So you have a combination. Sotomayor, were those enhancement cases? No, but they're not called possession. They're possession, but we already reversed the conviction for possession. No question about it. But what I'm saying is when there's an absence of direct evidence other than it exists, there's a gun, and somebody could have possessed it, although there's no evidence presented that somebody, in fact, did possess it. Were there guns in the house? Yes. And they escaped from the house? No, nobody put him in the house. And one of the points that Zardisci made was that he wasn't armed, and it wasn't like he took a gun, ran out the door, and ran away with a gun. He wasn't in the house? There was no evidence. They found him behind the garage. He was outside. Nobody found him inside the house. Personally, Mr. Ruiz was not in the house. When he was arrested? When he was arrested. Well, yeah, he was running away from behind, outside, then he climbed over. And the other point I want to make about the—I want to leave time for co-counsel—the other point I want to make about the escape and the obstruction of justice is that if you look at the cases, they talk about some time elapsing, much more than an hour. They talk about a week or a day or many hours. In this particular case, I think it's a continuation of the same kind of mental state, the concept that he had originally. And finally, with respect to the acceptance of responsibility, you know, the Court talks about unbundling the original case so that it's a new sentencing. And what happened was, it's not a correction of the last sentence. It's a brand-new sentence. And using his statement, I'm innocent, and he's saying an innocent man away, I think was wrong because he had litigated the issue of the gun. And it certainly was, in effect, guilt or innocence. He was innocent of the gun charge. So, therefore, it was an ambiguous statement at best. And then to say, well, I'm not going to give you credit for acknowledging that you're buying methanol for the wrong, you know, purposes, which is to manufacture drugs, is not an acceptance of responsibility. I don't know what is. Okay. I'd like to hear from you. Call counsel. Thank you. Thank you very much. Good morning, Your Honor. I'm John Garland. I represent Mr. Noriega Valenzuela. I represented him in the trial and on the first appeal, and now again. I took a different approach than Mr. Ruiz's counsel with respect to the appeal of Mr. Noriega's sentence. Mr. Noriega contends that his sentence of 235 months was unreasonable because it was longer than any of the other co-defendants that were sentenced by Judge Ishii. Before the first appeal, the sentence was considerably longer for Mr. Ruiz than it was for Mr. Noriega Valenzuela. After the resentencing, they both wound up with the same sentence, didn't they? That is correct. What happened? I honestly cannot answer that. Judge Ishii may be able to. The government actually stated on the record that Mr. Noriega Valenzuela was less culpable than any of the co-defendants. That occurred on two different occasions. It is cited in my brief, the locations in the record. In spite of that fact, the court found that all the defendants were equal participants in the criminal activity. The judge also erroneously believed that he could not sentence Mr. Noriega Valenzuela to less time than any of the co-defendants who had pled guilty and cooperated or attempted to cooperate. We don't know specifically who actually cooperated and who did not. Government knows that except for the fact that we had the testimony of one of the co-defendants in the trial, and he received a 40-month sentence. Finally, Mr. Noriega Valenzuela contends that the judge violated the parsimony provision of 18 U.S.C. 3553A in that he did not impose a sentence that was sufficient but not greater than necessary to comply with the sentencing provisions. The reasonableness of a sentence is difficult to determine. We don't have a bright line. If we did, it would make our life a lot easier and probably the court's easier as well. Did your client have a criminal history? He had no criminal history, Your Honor. He had he was the next to the youngest. He was a couple months older than Efren Lopez. So he was Category 1. He was criminal history Category 1. He was he had no problems whatsoever prior to this instance. He did request a minor role reduction in the original sentencing. The same judge, Judge Easey, denied that. I did not raise it again as a reduction for a minor role under the guidelines. However, I argued that it was a 3553 factor that could be taken into consideration as grounds for a variance as opposed to a departure under the guidelines or a minor role reduction. As the government argued, they believed that he was less culpable than the co-defendants, but not substantially less culpable. Another distinction that is difficult to define because we don't have some scale that we can weigh that on. And unfortunately, that decision on minor roles is left for the most part in the hands of the prosecution because the judge doesn't know the specific facts of each case. And if a prosecutor says that a particular defendant is significantly less culpable than others, the judge is going to follow that. If the defendant says that he was significantly less culpable, the defendant is required to prove it. And it's very difficult to prove a negative, as the court is well aware, unless the court has some questions. I'm sorry. I'm free to be. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Kirk Sherriff for the United States. If I may, I'd like to address the sentencing guidelines arguments made by Mr. Ruiz and Mr. Ruiz, and address reasonableness as to both defendants. With respect to the weapons enhancement, first of all, there's discussion in the appellant's brief that it's a law of the case that clearly does not apply under U.S. v. Allen, this Court's decision. And Ruiz also sent the case back down to the sentencing court for an unbundling and resentencing as the whole package. With respect to the weapon, the weapons that were undisputably found in the garage and in the loft area of the property, there were several that were found in concealed locations in the garage. There were two, however, that were found in plain view in the loft area on a couch without cushions. One was partially obscured, one was in plain view on that couch, and one of the two was loaded. And there is evidence, and the Court considered the evidence on sentencing, that at least the Court considered the possession or knowledge of the gun by at least one of the co-defendants. And that would be Mr. Noriega Valenzuela in the sense, well, let me put it this way, I'm sorry. The Court did not identify which co-defendant possessed the gun, but I think as a fair reading of the evidence, you've got evidence that at least two possessed the gun or had knowledge of the gun. One, with respect to Noriega Valenzuela, when he's arrested at the scene that night, having fled from the garage, he acknowledges that he was in the garage all day watching television. There are only two televisions, as you read the record regarding the entry into the garage, in the garage area. They're both in the loft area. One was connected to a monitor on the front door area, and the second was connected to a, I'm sorry, one was connected to a camera that was showing the front door of the house, and another was connected to a camera showing the garage entry area. And when the agents entered into the loft area, both of those monitors were still on, the guns were in plain view. Noriega Valenzuela's testimony was that he was in the loft all day watching television. He had to have known of the guns. They were there in plain view. There is also in the record, although the district court did not consider it. Well, are you saying he must have possessed the guns? That's right. What do you have to show? Here's the problem. You have to show it for the enhancement. Is it different, does possession have a different meaning for purposes of the enhancement than it does for the conviction? I think it does, and I think, I just, I do want to clarify one thing that Kelso and Highsmith, I believe, are Section 2B1.1D cases, not 924C only. So I think the language in there does need to be addressed, and I want to address that. But I think that the possession is, the government has to show that a gun was found. Weapons were found, a gun or otherwise. And that by preponderance, it would appear that one of the defendants or one of the co-defendants in a conspiracy case would have knowledge of that gun. I think at that point, you've got under note three of the sentencing guideline commentary. That adjustment should be applied unless it's clearly improbable that the weapon was connected with the offense. I think that clearly improbable language would apply, and there's been no showing that it's clearly improbable that these weapons were connected with this offense. Well, hang on. Yes, Your Honor. Just one second. Didn't Judge Ishii, in articulating the reasons for sentencing below the guideline range, one of the factors he addressed was the fact that they may have been unaware of the weapons? Well, he testified, I'm sorry, he stated at the sentencing that Mr. Noriega Valenzuela had full access to the garage area, including the loft, and that he was up in the loft at some point watching television. As to the gun, he said it was clear that the defendant inferentially had knowledge of the firearms. So, and it was reasonably foreseeable that given the drug manufacturing process and the agent testimony that guns are commonly used both to protect the drug traffickers and to protect the drugs, that it would be, that knowledge would be expanded to all the co-conspirators. So I don't, with respect to Mr. Noriega Valenzuela, and I'm referring to excerpts of record in his case at 118-5-16, I think the court found that based upon the inferences from the testimony, it did appear that he was in the loft, and certainly the firearms were there. And that he inferentially had knowledge of the firearms. Now, the next question is, is that enough? I mean, this is my problem, is I'm looking at the commentary to the guideline. Yes. And it says, the enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. Now, that does not, to me, suggest that if you simply know that there's a weapon around that you are, that you get the enhancement for possession, because it says, because it talks about the increased danger of violence when drug traffickers possess weapons. And it doesn't make a lot of sense to me to say that Defendant A gets an enhancement for possession solely if he knows that Defendant B possessed a weapon, unless it's a conspiracy. Well, in this case, it – I'm sorry, Your Honor. It is a conspiracy in this case. They were all convicted of the conspiracy. And just to be clear, all five of the co-defendants had the enhancement applied to them. So we're up on appeal as to two of them, only one of whom is even challenging the enhancement. Mr. Noriega Valenzuela is not. And the other three who pled were also – also had the sentencing enhancement considered at their sentencing. Is there a requirement to apply the sentencing enhancement at issue that the individual being sentenced be aware of the presence of the firearms? I think that the individual being sentenced has to have knowledge of the likelihood of firearms being present, given the nature of the activity in which they're engaged. And I think that the – given the nature of the drug trafficking enterprise, and given the agent testimony as to the likely and common presence of firearms, both to protect the drug traffickers and to protect the drugs, I think that is sufficient to infer that knowledge upon the co-defendant, in this case, Mr. Ruiz. I would – I would like to – Well, did they plead to conspiracy? They pled to conspiracy. Yes. Yes. The other three. And I think, Your Honor, I would – I would note, now, the judge did not consider this in terms of applying the enhancement. However, one of the co-defendants, Mr. Lopez, admitted to the government that he possessed the gun for – one of the guns – for protection and was in the loft area, and that he was obviously aware of it. That was set before the Court in a declaration by trial counsel. And the Court found that – he didn't find that the declaration was uncredible or found that the declaration was credible and that that statement by Mr. Lopez – I think he referred to it as a statement against interest. I believe it would be admission of a party opponent in any event, so it would not be hearsay. But in any event, there is also that evidence as to the weapon possession by one of the co-defendants. The district court did not rely on that declaration in sentencing Mr. Ruiz, however. Were there any further questions on 2D1.1b1? With respect to the willful obstruction of justice, I don't know that that was addressed. I think I'll refer to the briefs on that. I think the key point I would make with respect to that, generally, is that as the district court found, the initial flight at the scene is not or was not something for which obstruction could be applied, given that a spontaneous flight from officers does not justify that as a general matter. However, what you have here is literally a Houdini-like escape by Mr. Ruiz after he is arrested, in custody, brought back to the Sallyport area of a jail. While he's in custody, he's instructed to remain on the bumper of the car while the interior of the car is searched for a contraband or anything he might have secreted in the back of a patrol car, at which point he slips off his handcuffs using a key that was later found in his possession. And that's reflected in the pre-sentence report. He scales a 14-foot fence, squeezes between barbed wire, and escapes for a period of time. Clearly, in that case, in those facts, the obstruction enhancement was justified. As to the minor role, I want to take a couple issues with respect to the characterization of the record. Mr. Ruiz was not simply a supplier of methanol, the solvent that was used in manufacturing. He arranged for the methanol to be purchased by Acosta, one of the other defendants, who was sentenced to a significantly lower amount, who was, in fact, simply a supplier of methanol, who was not at the scene manufacturing when agents executed the search warrant, who supplied the methanol to Mr. Ruiz, who then transported it. First of all, repackaged it into smaller units and then transported it to the scene of the meth lab, at which point he left and then came back and was still present that night when the manufacturing process was going on. He fled when officers approached. And Acosta's testimony at trial reflects that Ruiz told him that he was going to be using the methanol for the manufacturing of, he used a slang word, but meaning manufacturing of meth. And that Ruiz also negotiated the price and quantity of methanol. It wasn't error by the court to find that it wasn't a minor role on those facts. And as to acceptance of responsibility, I think the court's decision in U.S. v. Martinez-Martinez is quite clear that acceptance at sentencing only when there are no pretrial statements, no pretrial admissions to officers and there are none in the record, that that late sentencing admission or admission at the sentencing phase, particularly here where he only admitted after it had been up on appeal and he was found guilty, or found the guilty verdicts on the drug conspiracy charge was affirmed, that there's no basis in that context for acceptance, or at least that it's certainly not error to deny acceptance. I'm sorry, Judge, that I could belabor this, but I'm still having trouble with the weapons. Okay. Let me go back. Because I'm not sure what you do with our decision in Ruiz, which seems to say that there was no evidence linking any conspirator to possession of this. And I appreciate that. And I think that, first, it is not law of the case, and there is a different burden when it returns back down to the district court. Ruiz itself said the sentence is unbundled. You have to consider everything all over again. It's a new package. It's not law of the case? I don't think it is law of the case under U.S. v. Allen. The law of the case does not apply. I think that what you have are – let me be clear, though. The factual statements of the Ninth Circuit's decision in Ruiz, we don't dispute It was the reason for vacating the – No, I understand that. We don't dispute the most of the sequence there, but I think there's something missing. It's true, there's no – there were no fingerprints on the guns. But what's missing there is the evidence that linked Mr. Noriega Valenzuela to being present in the loft area. By his own testimony, he was in the loft area watching television – I'm sorry. He was in the garage watching television all day. The only televisions the record shows in that garage were in the loft area. And those televisions were linked to the monitors monitoring the approach of the agents, and that's why everybody – this is inference from the record – but that's why everybody fled prior to the agents entering the building, because somebody was observing the monitors and watching the approach. And it's when the – Your argument is that he was in the area, therefore, he must have possessed the weapon. They're in plain view on the couch. That's right. And at least for sentencing purposes, he clearly had knowledge of the presence of the weapons in plain view. He's in the loft watching the televisions. He knows the weapons are there, and for sentencing purposes, the burden is shifted, and it's – unless it's clearly improbable, the sentencing enhancement applies. I have five seconds if I may, just with respect to the disparity, if I may address it briefly, Your Honor. The point there is that Mr. Noriega Valenzuela was found with a white crystalline substance on his – on his body, on his pants. It tested positive for pseudoephedrine. He had keys to both – both defendants had keys to both the loft area and a key to the garage. Mr. Noriega Valenzuela, by everything on him, was clearly involved in the manufacturing process that was going on. The – and Mr. Ruiz was clearly involved in supplying, and he was present for the manufacturing, clearly involved also with obtaining a key ingredient. That might – that might go to the minor role point, but what about just plain reasonableness? I mean, here, the sentences are so incredibly high that even when you get a substantial downward departure, you've got two first offenders who are up for 20 years, it's absolutely unbelievable. I don't dispute that, Your Honor, but that's a function of Congress's decisions in this area and the sentencing guidelines, and also the fact that – What's the congressional minimum? Mandatory minimum of 10 years. Right. And as a policy statement – The sentencing commission, I guess, is responsible for the rest of it. Well, you've got 360 to life for Mr. Ruiz on – under the sentencing guidelines, and the judge significantly varied from that. He went down 10 years, 125 months, over – over 10 years. He didn't go down. And I think that, you know, the judge clearly hit all of the arguments raised and gave plenty of opportunity to the defendants and also clearly addressed the 3553A factors. And given the cooperation and the substantial assistance that was provided by other co-defendants who pleaded guilty, the disparity is simply not unreasonable in this case. Okay. Thank you. Thank you, Your Honor. You have about a minute left, if you want to use it as your last. Mr. Judge points out, you're talking about the man who did everything, who was his lab, his place, he had priors. He gets 17 and a half years, and our client, who's a first offender, never been involved with respect to any convictions of any kind, and he gets 20. The bottom line is, with respect to the guns, what they're saying is he should have known that somebody else possessed something. And I think that that's stretching the concept of what you should know and what you should be responsible for. With respect to the minor role, what did he do? He picked up some methanol. The person who sold him the methanol, who's the methanol dealer, he gets three years. Our guy gets 20. It's just the other way around. That is true, and that should amount to some discount, but to suggest that a 17-year difference between a first offender and somebody who's been convicted previously, who's a methadone dealer, and obviously a meth dealer, only gets three, I think that's not fair. Thank you. Thank you. The case just argued is submitted for decision.
judges: Canby, Wardlaw, Trager